**APPENDIX D**
**ESCROW AGREEMENT**
**FOR THE VIGOR SHIPYARDS HABITAT PROJECTS**

This Escrow Agreement dated this ___ day of _____, _____ (the "Escrow Agreement"), is entered into by and among Vigor Industrial LLC, an Oregon limited liability company ("Vigor"), Exxon Mobil Corporation, a _____ Corporation ("Exxon Mobil") (also referred to as the "Performing Parties"), the National Oceanic and Atmospheric Administration ("NOAA"), on behalf of the U.S. Department of Commerce, and Wells Fargo Bank, National Association, a national banking association organized under the laws of the United States, as escrow agent ("Escrow Agent").

**RECITALS**

A.      Performing Parties and the natural resource trustees who are members of the Elliott Bay Trustee Council, which is comprised of NOAA; the United States Department of the Interior; the Department of Ecology, on behalf of the State of Washington; the Muckleshoot Indian Tribe; and the Suquamish Tribe, are parties to a Consent Decree to which the Escrow Agreement is an Appendix.

B.      Under the Consent Decree, entered between the Performing Parties, the United States, the State of Washington, the Muckleshoot Indian Tribe, and the Suquamish Tribe on [Effective Date] in the Western District of Washington, Performing Parties must provide financial assurance to guarantee the monitoring, maintenance, and long-term stewardship of the Vigor Shipyard Habitat Projects, in accordance with a Scope of Work for the Vigor Shipyards Habitat Projects ("SOW") to be implemented pursuant to the Consent Decree.

C.      The monitoring, maintenance, and long-term stewardship of the habitat restoration to be guaranteed through the establishment of this Escrow Agreement is detailed in the SOW, hereinafter called the "Guaranteed Work."

D.      Performing Parties agree to place in escrow certain funds for the Guaranteed Work and the Escrow Agent agrees to hold and distribute such funds in accordance with the terms of this Escrow Agreement.

E.      The Performing Parties and NOAA acknowledge that the Escrow Agent is not a party to, is not bound by, and has no duties or obligations under, the Consent Decree, that all references in this Escrow Agreement to the Consent Decree are for convenience, and that the Escrow Agent shall have no implied duties beyond the express duties set forth in this Escrow Agreement.

In consideration of the promises and agreements of the Performing Parties, NOAA, and Escrow Agent and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Performing Parties, NOAA, and the Escrow Agent agree as follows:

1

# ARTICLE 1
## ESCROW DEPOSIT

Section 1.1.    <u>Receipt of Escrow Property; Effective Date</u>.

      (a)    Following execution of this Escrow Agreement, Performing Parties shall deliver to the Escrow Agent the amount of $300,000.00 (the "Escrow Property") in immediately available funds for deposit into an escrow account, as described in Section 1.2 (the "Escrow Account").  From time to time, pursuant to the terms of the Consent Decree, additional funds may be delivered by the Performing Parties to Escrow Agent for deposit into the Escrow Account, which funds shall become part of the Escrow Property.  Prior to delivery of any additional funds the Performing Parties shall notify the Escrow Agent, in writing, of the amount of additional deposit and date of delivery.

      (b)    The Effective Date of this Escrow Agreement is the date by which it is executed by the Performing Parties and the funds are deposited with the Escrow Agent.

Section 1.2.    <u>Investments</u>.

      (a)    The Escrow Agent is authorized and directed to deposit, transfer, hold, and invest the Escrow Property and any investment income thereon as set forth in Exhibit A hereto or as set forth in any subsequent written instruction signed by the Performing Parties and NOAA.  Any investment earnings and income on the Escrow Property shall become part of the Escrow Property and shall be disbursed in accordance with Section 1.3 or Section 1.6 of this Escrow Agreement.

      (b)    The Escrow Agent is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required under this Escrow Agreement.  The Escrow Agent shall have no responsibility or liability for any loss which may result from any investment or sale of investment made pursuant to this Escrow Agreement.  The Escrow Agent is hereby authorized, in making or disposing of any investment permitted by this Escrow Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Escrow Agent or for any third person or dealing as principal for its own account.  The Performing Parties and NOAA acknowledge that the Escrow Agent is not providing investment supervision, recommendations, or advice.

      (c)    The Parties agree that confirmations of permitted investments are not required to be issued by the Escrow Agent for each month in which a monthly statement is rendered.  No statement need be rendered for any fund or account if no activity occurred in such fund or account during such month.  The Performing Parties and NOAA may obtain confirmations at no additional cost upon written request.

Section 1.3.   <u>Disbursements</u>.

(a)   In the event NOAA determines, pursuant to the terms of the Consent Decree, that Performing Parties have failed to meet their monitoring, maintenance, or long-term stewardship obligations described in the Consent Decree, including the SOW, NOAA may, in accordance with the terms of the Consent Decree, notify, in writing, the Performing Parties of the deficiencies in the Performing Parties' monitoring, maintenance, or long-term stewardship obligations ("Access to Escrow Notice").   In the event that Performing Parties are unable to cure the deficiencies specified in the Access to Escrow Notice, in accordance with the terms of paragraph 25 of the Consent Decree ("Access to Escrow Account"), NOAA will notify Escrow Agent of such failure (the "Exercise of Access to Escrow Account Notice") and will send a copy to the Performing Parties, in accordance with the notice requirements in Section 4.3.   Upon receipt of the Exercise of Access to Escrow Account Notice from NOAA, Escrow Agent shall release such Escrow Property in the Escrow Account that NOAA deems necessary to implement the required monitoring, maintenance, and long-term stewardship obligations to NOAA (into an account to be determined by NOAA).   Each Exercise of Access to Escrow Account Notice shall be accompanied by a written instruction executed by an authorized representative of NOAA listed on Exhibit B-1 attached hereto. The Escrow Agent shall disburse Escrow Property from the Escrow Account to NOAA in accordance with the instructions specified in such written instruction, as promptly as practicable, and in no event later than three (3) Business Days after the Escrow Agent's receipt of such written instruction.   The Performing Parties are not required to approve or execute any disbursement request under this Section 1.3(a).

(b)   From time to time, pursuant to the terms of the Consent Decree, NOAA may submit documentation to Escrow Agent indicating that NOAA has approved a request by Performing Parties to reduce the amount of the Escrow Property in the Escrow Account.   Upon receipt of such documentation from NOAA, Escrow Agent shall release such Escrow Property in the approved amount to the Performing Parties (into an account to be determined by the Performing Parties).   Each submission of documentation presented pursuant to this Section 1.3(b) shall be accompanied by a joint written instruction executed by an authorized representative on Part I of each Exhibit B-1, Exhibit B-2 and Exhibit B-3 attached hereto.   The Escrow Agent shall disburse Escrow Property from the Escrow Account to the designated party or parties in the amount(s) and in accordance with the instructions specified in such joint written instruction, as promptly as practicable, and in no event later than three (3) Business Days after the Escrow Agent's receipt of such joint written instruction. Escrow Agent shall not release any funds in the Escrow Account without written documentation of NOAA's approval.

(c)   The Performing Parties agree to deliver an IRS form W-9 or W-8 for any payee(s), if such form has not been previously provided to the Escrow Agent.

Section 1.4.   <u>Security Procedure For Funds Transfers</u>.   The Escrow Agent shall confirm each funds transfer instruction received from Performing Parties and NOAA by means of the security procedure selected by the Performing Parties and NOAA and communicated to the Escrow Agent through a signed certificate in the form of Exhibit B-1, Exhibit B-2, or Exhibit B-3 attached hereto, which upon receipt by the Escrow Agent shall become a part of this Escrow

Agreement.  Once delivered to the Escrow Agent, Exhibit B-1, Exhibit B-2, or Exhibit B-3 may be revised or rescinded only by a writing signed by an authorized representative of the Performing Parties and NOAA.  Such revisions or rescissions shall be effective only after actual receipt and following such period of time as may be necessary to afford the Escrow Agent a reasonable opportunity to act on it.  If a revised Exhibit B-1, B-2, or B-3 or a rescission of an existing Exhibit B-1, B-2, or B-3 is delivered to the Escrow Agent by an entity that is a successor-in-interest to a Performing Party or NOAA, such document shall be accompanied by additional documentation satisfactory to the Escrow Agent showing that such entity has succeeded to the rights and responsibilities of a Performing Party or NOAA under this Escrow Agreement.

The Performing Parties and NOAA understand that the Escrow Agent's inability to receive or confirm funds transfer instructions pursuant to the security procedure selected by the Performing Parties and NOAA may result in a delay in accomplishing such funds transfer, and agree that the Escrow Agent shall not be liable for any loss caused by any such delay.

Section 1.5.    <u>Income Tax Allocation and Reporting</u>.

(a)    The Performing Parties agree that, for tax reporting purposes, all interest and other income from investment of the Escrow Property shall, as of the end of each calendar year and to the extent required by the Internal Revenue Service, be reported as having been earned by Vigor, whether or not such income was disbursed during such calendar year.

(b)    For certain payments made pursuant to Section 1.3(b) of this Escrow Agreement, the Escrow Agent may be required to make a "reportable payment" or "withholdable payment" and in such cases the Escrow Agent shall have the duty to act as a payor or withholding agent, respectively, that is responsible for any tax withholding and reporting required under Chapters 3, 4, and 61 of the United States Internal Revenue Code of 1986, as amended (the "Code").  The Escrow Agent shall have the sole right to make the determination as to which payments are "reportable payments" or "withholdable payments."  Vigor shall provide an executed IRS Form W-9 or appropriate IRS Form W-8 (or, in each case, any successor form) to the Escrow Agent prior to the date hereof, and shall promptly update any such form to the extent such form becomes obsolete or inaccurate in any respect. The Escrow Agent shall have the right to request from any party to this Escrow Agreement, or any other person or entity entitled to payment hereunder, any additional forms, documentation or other information as may be reasonably necessary for the Escrow Agent to satisfy its reporting and withholding obligations under the Code.  To the extent any such forms to be delivered under this Section 1.5(b) are not provided prior to the date hereof or by the time the related payment is required to be made or are determined by the Escrow Agent to be incomplete, inaccurate, or both, the Escrow Agent shall be entitled to withhold (without liability) a portion of any interest or other income earned on the investment of the Escrow Property or on any such payments hereunder to the extent withholding is required under Chapters 3, 4, or 61 of the Code, and shall have no obligation to gross up any such payment.  This Section does not apply to any payments pursuant to Section 1.3(a).

(c)    To the extent that the Escrow Agent becomes liable for the payment of any taxes in respect of income derived from the investment of the Escrow Property, the Escrow Agent shall

4

satisfy such liability to the extent possible from the Escrow Property.  The Performing Parties, jointly and severally, shall indemnify, defend, and hold the Escrow Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that may be assessed against the Escrow Agent on or with respect to the Escrow Property and the investment thereof, unless such tax, late payment, interest, penalty or other expense was directly caused by the gross negligence or willful misconduct of the Escrow Agent.  The indemnification provided by this Section 1.5(c) is in addition to the indemnification provided in Section 3.1 and shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

(d)     The Performing Parties and NOAA acknowledge that, in order to help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person or corporation who opens an account or enters into a business relationship.  The Performing Parties and NOAA hereby agree that they shall provide the Escrow Agent with such information as the Escrow Agent may request including, but not limited to, each party's name, physical address, tax identification number (if applicable) and other information that will assist the Escrow Agent in identifying and verifying each party's identity, such as organizational documents, certificates of good standing, licenses to do business, or other pertinent identifying information.

Section 1.6.    Termination.  The anticipated term of this Escrow Agreement is from the Effective Date until 35 years later, in accordance with Section VII (Restoration Projects) of the Consent Decree.  The Escrow Agreement may only be terminated in accordance with the requirements of Paragraph 26 (Release, Cancellation, or Discontinuation of the Escrow Account) of the Consent Decree.  At the end of the term of this Escrow Agreement, as provided in Paragraph 26 of the Consent Decree, the Performing Parties may request, with written approval by NOAA, that the remaining Escrow Property be released to the Performing Parties.  Provided, however that if both of the Performing Parties cease to be in existence, prior to or upon the anticipated termination date, then NOAA may direct the Escrow Agent to terminate the Escrow Account in accordance with the Consent Decree and pay the remaining Escrow Property to NOAA.

Section 1.7.    Administration.

(a)     Escrow Agent shall prepare quarterly account statements describing the manner in which the Escrow Property is invested and the current market value of the Escrow Property, as well as income, and expenses of the Escrow Account.  Copies of quarterly account statements shall be transmitted electronically to the Performing Parties and NOAA.

(b)     Escrow Agent shall prepare annual account statements describing the manner in which the Escrow Property is invested and the current market value of the Escrow Property, as well as income, and expenses of the Escrow Account. Copies of annual account statements shall be transmitted electronically to the Performing Parties and NOAA.

(c)     The Parties may obtain confirmations at no additional cost upon any party's written request.

(d)     Escrow Agent shall advise, consult, and confer with and otherwise inform the Performing Parties and NOAA as to matters arising out of this Escrow Agreement, administration of the Escrow Account, or any other matter that the Escrow Agent, in its discretion, deems appropriate to bring to their attention.

(e)     Escrow Agent shall maintain and preserve, consistent with generally accepted industry standards, records of all actions taken by Escrow Agent as to matters arising out of this Escrow Agreement, administration of the Escrow Account, and Escrow Agent's performance of services under this Escrow Agreement.  Escrow Agent shall provide electronic copies of such reasonable records to the Performing Parties or NOAA upon request.

## ARTICLE 2
## DUTIES OF THE ESCROW AGENT

Section 2.1.     <u>Scope of Responsibility</u>.  Notwithstanding any provision to the contrary, the Escrow Agent is obligated only to perform the duties specifically set forth in this Escrow Agreement, which shall be deemed purely ministerial in nature.  Under no circumstance will the Escrow Agent be deemed to be a fiduciary to any party or any other person under this Escrow Agreement.  The Escrow Agent will not be responsible or liable for the failure of any party to perform in accordance with this Escrow Agreement.  The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Escrow Agreement, whether or not an original or a copy of such agreement has been provided to the Escrow Agent; and the Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of any such agreement, instrument, or document.  References in this Escrow Agreement to any other agreement, instrument, or document are for the convenience of the Performing Parties and NOAA, and the Escrow Agent has no duties or obligations with respect thereto.  The Escrow Agent will not be responsible to determine or to make inquiry into any term, capitalized or otherwise, not defined herein.  This Escrow Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred or implied from the terms of this Escrow Agreement or any other agreement.

Section 2.2.     <u>Attorneys and Agents</u>.  The Escrow Agent shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Escrow Agent in accordance with the advice of counsel or other professionals retained or consulted by the Escrow Agent.  The Escrow Agent shall be reimbursed as set forth in Section 3.4 for any and all compensation (fees, expenses and other costs) paid or reimbursed to such counsel or professionals.  The Escrow Agent may perform any and all of its duties through its agents, representatives, attorneys, custodians, or nominees.  The Escrow Agent shall not be responsible for the conduct of agents or attorneys appointed by it with due care.

Section 2.3.     <u>Reliance</u>.  The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the direction or consent of the Performing Parties, NOAA, or their respective agents, representatives, successors, or assigns.  The Escrow Agent shall not be liable

for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority.  Concurrent with the execution of this Escrow Agreement, the Parties shall deliver to the Escrow Agent Exhibit B-1, Exhibit B-2, and Exhibit B-3, which contain authorized signer designations in Part I thereof.  The Performing Parties and NOAA represent and warrant that each person signing this Escrow Agreement is duly authorized and has legal capacity to execute and deliver this Escrow Agreement, along with each exhibit, agreement, document, and instrument to be executed and delivered by the Performing Parties and NOAA.

Section 2.4.    <u>Right Not Duty Undertaken</u>.  The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties.

Section 2.5.    <u>No Financial Obligation</u>.  No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.

## ARTICLE 3
## PROVISIONS CONCERNING THE ESCROW AGENT

Section 3.1.    <u>Indemnification</u>.  The Performing Parties, jointly and severally, shall indemnify, defend and hold harmless the Escrow Agent from and against any and all loss, liability, cost, damage, and expense, including, without limitation, attorneys' fees and expenses or other professional fees and expenses which the Escrow Agent may suffer or incur by reason of any action, claim, or proceeding brought against the Escrow Agent, arising out of or relating in any way to this Escrow Agreement or any transaction to which this Escrow Agreement relates, unless such loss, liability, cost, damage or expense shall have been finally adjudicated to have been directly caused by the willful misconduct or gross negligence of the Escrow Agent.  The provisions of this Section 3.1 shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

Section 3.2.    <u>Limitation of Liability</u>.  THE ESCROW AGENT SHALL NOT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY (I) DAMAGES, LOSSES, OR EXPENSES ARISING OUT OF THE SERVICES PROVIDED HEREUNDER, OTHER THAN DAMAGES, LOSSES, OR EXPENSES WHICH HAVE BEEN FINALLY ADJUDICATED TO HAVE DIRECTLY RESULTED FROM THE ESCROW AGENT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR (II) SPECIAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES OR LOSSES OF ANY KIND WHATSOEVER (INCLUDING WITHOUT LIMITATION LOST PROFITS), EVEN IF THE ESCROW AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

Section 3.3.    <u>Resignation or Removal</u>.  The Escrow Agent may resign by furnishing written notice of its resignation to the Performing Parties and NOAA.  In accordance with Paragraph 24 of the Consent Decree, the Performing Parties may only remove and replace the Escrow Agent

with the approval of NOAA. The Performing Parties and NOAA may remove the Escrow Agent by furnishing to the Escrow Agent a joint written notice of such removal, along with payment by Performing Parties of all fees and expenses to which the Escrow Agent is entitled through the date of removal.  Such resignation or removal, as the case may be, shall be effective ninety (90) calendar days after the delivery of such notice or upon the earlier appointment of a successor, and the Escrow Agent's sole responsibility thereafter shall be to safely keep the Escrow Property and to deliver the same to NOAA or to a successor escrow agent as shall be appointed by the Performing Parties and NOAA, as evidenced by a joint written notice filed with the Escrow Agent or in accordance with a court order.  If the Performing Parties have failed to appoint, with approval of NOAA, a successor escrow agent prior to the expiration of ninety (90) calendar days following the delivery of such notice of resignation or removal, the Escrow Agent shall pay the full Escrow Property to NOAA in accordance with Paragraph 25 of the Consent Decree.

Section 3.4.    <u>Compensation</u>.  The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached hereto as Exhibit C, which compensation shall be paid by Vigor.  The fee agreed upon for the services rendered hereunder is intended as full compensation for the Escrow Agent's services as contemplated by this Escrow Agreement; provided, however, that in the event that the conditions for the disbursement of funds under this Escrow Agreement are not fulfilled, or the Escrow Agent renders any service not contemplated in this Escrow Agreement, or there is any assignment of interest in the subject matter of this Escrow Agreement, or any material modification hereof, or if any material controversy arises hereunder, or the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or the subject matter hereof, then the Escrow Agent shall be compensated for such extraordinary services and reimbursed for all reasonable costs and expenses, including reasonable attorneys' fees and expenses, occasioned by any such delay, controversy, litigation or event, which compensation, costs and expenses shall be paid by the Performing Parties.  If any amount due to the Escrow Agent hereunder is not paid within thirty (30) calendar days of the date due, the Escrow Agent in its sole discretion may charge interest on such amount up to the highest rate permitted by applicable law.

Section 3.5.    <u>Disagreements</u>.  If any conflict, disagreement, or dispute arises between, among, or involving any of the parties hereto concerning the meaning or validity of any provision hereunder or concerning any other matter relating to this Escrow Agreement, such conflict, disagreement or dispute shall be resolved pursuant to the terms of the Consent Decree and in accordance with Section 4.4 below. This Section and Section 4.4 do not apply to any written instructions for disbursements submitted by NOAA pursuant to Section 1.3(a).  The Escrow Agent shall honor all such written instructions for disbursement submitted by NOAA pursuant to Section 1.3(a) regardless of any disputes between NOAA and Performing Parties.

Section 3.6    <u>Merger or Consolidation</u>.  Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Escrow Agent is a party, shall be and become the successor escrow agent under this Escrow Agreement and shall have and succeed to the

rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

Section 3.7.     Notification by Escrow Agent of Claims and Legal Orders.  In the event the Escrow Agent receives notice of any claim by any party or order of a court regarding the Escrow Property, the Escrow Agent shall notify the Performing Parties and NOAA of such claim or order within 14 days of receipt of the notice.

Section 3.8     Force Majeure.  The Escrow Agent shall not be responsible or liable for any failure or delay in the performance of its obligation under this Escrow Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation, acts of God; earthquakes; fire; flood; wars; acts of terrorism; civil or military disturbances; sabotage; epidemic; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications services; accidents; labor disputes; acts of civil or military authority or governmental action; it being understood that the Escrow Agent shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.

## ARTICLE 4
## MISCELLANEOUS

Section 4.1.     Binding Agreement, Successors and Assigns.  The Performing Parties, NOAA, and Escrow Agent represent and warrant that the execution and delivery of this Escrow Agreement and the performance of each party's obligations hereunder have been duly authorized and that the Escrow Agreement is a valid and legal agreement binding on each party and enforceable in accordance with its terms.  This Escrow Agreement shall be binding on and inure to the benefit of the Performing Parties, NOAA, and the Escrow Agent and their respective successors and permitted assigns.  No other persons shall have any rights under this Escrow Agreement.  No assignment of the interest of any of the Performing Parties or NOAA shall be binding unless and until written notice of such assignment shall be delivered to the other parties and the Escrow Agent, and shall require the prior written consent of the other parties and the Escrow Agent (such consent not to be unreasonably withheld, conditioned, or delayed).

Section 4.2.     Abandonment of Escrow Property by the Performing Parties.  If the Performing Parties are no longer in existence, or if the Performing Parties are presumed to have abandoned this account, the remaining Escrow Property shall be paid in full to NOAA. In no event shall the Escrow Property be considered to be abandoned by NOAA or its successor.

Section 4.3.     Notices.  All notices, requests, demands, and other communications required under this Escrow Agreement shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) on the day of transmission if sent by electronic mail ("e-mail", as long as such e-mail is accompanied by a PDF signature or similar version of the relevant document bearing an authorized signature, which such signature shall, in the case of each of the parties, be a signature set forth in Exhibit B-1, B-2, or B-3, as applicable) to the e-mail address given below, and written confirmation of receipt is obtained promptly after completion of transmission, (iv) by

overnight delivery with a reputable national overnight delivery service, or (v) by mail or by certified mail, return receipt requested, and postage prepaid.  If any notice is mailed, it shall be deemed given five (5) Business Days after the date such notice is deposited in the United States mail.  For the purpose of this Escrow Agreement, "Business Day" shall mean any day other than a Saturday, a Sunday, a federal or state holiday, and any other day on which the Escrow Agent is closed.  If notice is given to a party, it shall be given at the address for such party set forth below. It shall be the responsibility of the Performing Parties and NOAA to notify the Escrow Agent and the other parties in writing of any name or address changes.  In the case of communications delivered to the Escrow Agent, such communications shall be deemed to have been given on the date received by the Escrow Agent.

If to Vigor:

Vigor Industrial LLC
5555 North Channel Ave.
Portland, Oregon  97217
Attention:  General Counsel
Telephone:  503-247-1833
E-mail:  Tae.Rhee@Vigor.net

If to Exxon Mobil:

Exxon Mobil Corporation
22777 Springwoods Village Pkwy (E2 3B 508)
Spring, Texas  77389
Attention:
Telephone:
Facsimile:
E-mail:

If to NOAA:

National Oceanic and Atmospheric Administration
7600 Sand Point Way NE, Building 1
Seattle, Washington  98115-6349
Attn:  Marla Steinhoff
Telephone:  206-526-6341
Facsimile: 206-526-6665
E-mail: marla.steinhoff@noaa.gov

If to the Escrow Agent:

Wells Fargo Bank, National Association
Corporate Trust Services
171 17th Street NW, 3rd Floor
Atlanta, GA 30363

Attention: Patrick St. Fleur
Telephone: 404-214-6338
Facsimile: 866-486-43898
E-mail: patrick.stfleur@wellsfargo.com

Section 4.4.    Governing Law; Jurisdiction.  This Escrow Agreement shall be governed by and construed in accordance with the laws of the State of Washington.  Any proceeding that may arise under this Escrow Agreement must be instituted in the U.S. District Court for the Western District of Washington in which the Consent Decree requiring performance of the Guaranteed Work is entered.

Section 4.5.    Cooperation.  The parties to this Escrow Agreement agree that they shall facilitate in good faith, the effectuation of this Escrow Agreement.

Section 4.6    Entire Agreement.  This Escrow Agreement and the exhibits hereto set forth the entire agreement and understanding of the parties related to the Escrow Property.  Notwithstanding the foregoing, in the event of any inconsistency between the statements in the body of this Escrow Agreement and those of the Consent Decree, (a) with respect to any inconsistency as between Performing Parties and NOAA, the statements in the body of the Consent Decree shall control; and (b) with respect to any inconsistency as between the Escrow Agent, on the one hand, and either Performing Parties or NOAA or both, on the other hand, the statements in the body of this Escrow Agreement shall control.

Section 4.7.    Amendment.  This Escrow Agreement may be amended, modified, superseded, rescinded, or canceled only by a written instrument executed by the Performing Parties, NOAA, and the Escrow Agent.

Section 4.8.    Waivers.  The failure of any party to this Escrow Agreement at any time or times to require performance of any provision under this Escrow Agreement shall in no manner affect the right at a later time to enforce the same performance.  A waiver by any party to this Escrow Agreement of any such condition or breach of any term, covenant, representation, or warranty contained in this Escrow Agreement, in any one or more instances, shall neither be construed as a further or continuing waiver of any such condition or breach nor a waiver of any other condition or breach of any other term, covenant, representation, or warranty contained in this Escrow Agreement.

Section 4.9.    Headings.  Section headings of this Escrow Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions of this Escrow Agreement.

Section 4.10.   Counterparts.  This Escrow Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original, and such counterparts shall together constitute one and the same instrument.  The exchange of copies of this Escrow Agreement and of signature pages by facsimile or by electronic image scan

11

transmission in pdf format shall constitute effective execution and delivery of this Escrow Agreement as to the Performing Parties, NOAA, and the Escrow Agent and may be used in lieu of the original Escrow Agreement for all purposes.

Section 4.11.   Trial by Jury.  Each of the parties to this Escrow Agreement hereby irrevocably waives all right to trial by jury to the extent permitted by law in any litigation, action, proceeding in any court arising out of, relating to, or in connection with this Escrow Agreement.

Section 4.12.   Publication; Disclosure.  By executing this Escrow Agreement, the Performing Parties and the Escrow Agent acknowledge that this Escrow Agreement (including related attachments) will be published as an attachment to the Consent Decree. The Performing Parties and NOAA agree to redact the manual signatures of the signatories to this Escrow Agreement, and any wiring or account number information, prior to publication.

Section 4.13.   Interests not Assignable or Subject to Claims of Creditors.  The interest of any party in the Escrow Property shall not be subject to attachment or assignment or be subject to the claims of any creditor of the Performing Parties, and any interest reserved to the Performing Parties shall be made available to the Performing Parties only upon termination of this Agreement.

Section 4.14.   No Third Party Beneficiaries.  The parties to this Escrow Agreement do not intend, and nothing in this Escrow Agreement shall be construed to mean, that any provision in this Escrow Agreement is for the benefit of any person or entity who is not a party to the Escrow Agreement.

Section 4.15.   Independent Legal Advice and Investigation.  In entering into this Escrow Agreement, the parties to the Escrow Agreement acknowledge that they have received independent legal advice from their own counsel and have relied on their own investigation and upon the advice of their own attorneys with respect to the terms provided in this Escrow Agreement.

Section 4.16.   Modifications of Guaranteed Work.  Performing Parties and NOAA recognize that the Guaranteed Work may be modified, revised, or amended in accordance with the terms of the Consent Decree and that such changes will not affect the terms and conditions of this Escrow Agreement.


[The remainder of this page left intentionally blank.]

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed as of the date first written above.

**Vigor Industrial LLC**

By: _____

Name: _____

Title: _____


**Exxon Mobil Corporation**
_____

By: _____

Name: _____

Title: _____


**National Oceanic and Atmospheric Administration**

By: _____

Name: _____

Title: _____


**WELLS FARGO BANK, NATIONAL ASSOCIATION, as Escrow Agent**

By: _____

Name: _____

Title: _____

<u>EXHIBIT A</u>

**Agency and Custody Account Direction
For Cash Balances**

Direction to use money market funds for cash balances for the following account(s) and all subaccounts thereof:

| Account name: | **Vigor Industrial LLC, / Exxon Mobil Corporation / NOAA Escrow Account** |
|---|---|
| Account number(s): | |

Wells Fargo Bank, N.A. or its affiliates, as applicable (Wells Fargo or Escrow Agent), is hereby directed, or as the Performing Parties and NOAA shall direct further from time to time in writing, to invest all cash held in the above referenced account in one of the money market funds (the fund) on the following page (please check one) or another permitted investment.

The Performing Parties and NOAA acknowledge that they have received and reviewed the fund's prospectus and have determined that the fund is an appropriate investment for the account.

The Performing Parties and NOAA understand that Escrow Agent will not exclude amounts invested in the fund from assets in the account that are subject to fees under any agreement between the parties.

The Performing Parties and NOAA understand that fund shares are *not* deposits or other obligations of, or guaranteed by, Wells Fargo Fund shares are not insured or guaranteed by the U.S. Government, the Federal Deposit Insurance Corporation or any other government agency and may lose value.

The Performing Parties and NOAA acknowledge that they have full power and authority to direct investments of the account listed above.

The Performing Parties understand that they may change this direction at any time and that it shall continue in effect until revoked or modified by the Performing Parties and NOAA by written notice to Wells Fargo.  The Performing Parties and NOAA also understand that if they choose to communicate this investment direction solely via facsimile or email, then the investment direction will be understood to be enforceable and binding.

| Company or issuer:  Vigor Industrial LLC | Address:  5555 North Channel Ave., Portland, Oregon  97217 |
|---|---|
| Authorized representative (sign): | Authorized representative (print name): |
| Date: | |

| Company or issuer: Exxon Mobil Corporation | Address: |
|---|---|
| Authorized representative (sign): | Authorized representative (print name): |
| Date: | |

| Company or issuer: National Oceanic and Atmospheric Administration (NOAA) | Address: |
|---|---|
| Authorized representative (sign): | Authorized representative (print name): |
| Date: | |

| Selection | Fund Name | Fund Number |
|---|---|---|
| ☒ | Wells Fargo 100% Treasury MMF | 008 |
| ☐ | Dreyfus Treasury Securities Cash MMF | 674 (100% Treasury) |
| ☐ | Federated U.S. Treasury Cash Reserve MMF | 632 (100% Treasury) |

\*(Funds above are service class or investor class)

***Fund shares are not deposits or other obligations of, or guaranteed by. Wells Fargo Bank, N.A., its affiliates or any other depository institution.  Fund shares are not insured or guaranteed by the U.S. Government, the Federal Deposit Insurance Corporation or any other government agency and may lose value.***

**Full prospectus and information for each investment election**

Wells Fargo Funds

Federated Money Market Funds

Dreyfus Money Market Funds

The Performing Parties and NOAA understand from reading the Wells Fargo Advantage Funds prospectus that Wells Fargo Funds Management, LLC, a wholly-owned subsidiary of Wells Fargo & Company, provides investment advisory and other administrative services for the Wells Fargo funds (the funds).  Other affiliates of Wells Fargo & Company may provide subadvisory and other services for the funds.  The funds are distributed by Wells Fargo Funds Distributor, LLC,

member FINRA or SIPC, an affiliate of Wells Fargo & Company.  The Performing Parties also understand that these and other affiliates of Wells Fargo & Company may be compensated for services provided to the funds as described in the prospectus for the funds.

<u>EXHIBIT B-1</u>

National Oceanic and Atmospheric Administration ("NOAA")  certifies that the names, titles, telephone numbers, e-mail addresses and specimen signatures set forth in Parts I and II of this Exhibit B-1 identify the persons authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of NOAA, and that the option checked in Part III of this Exhibit B-1 is the security procedure selected by NOAA  for use in verifying that a funds transfer instruction received by the Escrow Agent is that of NOAA .

NOAA has reviewed each of the security procedures and has determined that the option checked in Part III of this Exhibit B-1 best meets its requirements; given the size, type and frequency of the instructions it will issue to the Escrow Agent.  By selecting the security procedure specified in Part III of this Exhibit B-1, NOAA acknowledges that it has elected to not use the other security procedures described and agrees to be bound by any funds transfer instruction, whether or not authorized, issued in its name and accepted by the Escrow Agent in compliance with the particular security procedure chosen by NOAA.

<u>NOTICE</u>:  The security procedure selected by NOAA will not be used to detect errors in the funds transfer instructions given by NOAA.  If a funds transfer instruction describes the beneficiary of the payment inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary.  If a funds transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.  Therefore, it is important that NOAA take such steps as it deems prudent to ensure that there are no such inconsistencies in the funds transfer instructions it sends to the Escrow Agent.

**Part I**

**Name, Title, Telephone Number, Electronic Mail ("e-mail") Address and Specimen Signature for person(s) designated to provide direction, including but not limited to funds transfer instructions, and to otherwise act on behalf of** NOAA

| <u>Name</u> | <u>Title</u> | <u>Telephone Number</u> | <u>E-mail Address</u> | <u>Specimen Signature</u> |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

**Part II**

**Name, Title, Telephone Number and E-mail Address for person(s) designated to confirm funds transfer instructions**

| <u>Name</u> | <u>Title</u> | <u>Telephone Number</u> | <u>E-mail Address</u> |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Part III**

**Means for delivery of instructions and/or confirmations**

The security procedure to be used with respect to funds transfer instructions is checked below:

☐     *Option 1.  Confirmation by telephone call-back*.  The Escrow Agent shall confirm funds transfer instructions by telephone call-back to a person at the telephone number designated on Part II above.  The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B-1.

   ☐ CHECK box, if applicable:
   If the Escrow Agent is unable to obtain confirmation by telephone call-back, the Escrow Agent may, at its discretion, confirm by e-mail, as described in Option 2.

☐     *Option 2.  Confirmation by e-mail*.  The Escrow Agent shall confirm funds transfer instructions by e-mail to a person at the e-mail address specified for such person in Part II of this Exhibit B-1. The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B-1.  ["_____"] understands the risks associated with communicating sensitive matters, including time sensitive matters, by e-mail.  ["_____"] further acknowledges that instructions and data sent by e-mail may be less confidential or secure than instructions or data transmitted by other methods. The Escrow Agent shall not be liable for any loss of the confidentiality of instructions and data prior to receipt by the Escrow Agent.

   ☐ CHECK box, if applicable:
   If the Escrow Agent is unable to obtain confirmation by e-mail, the Escrow Agent may, at its discretion, confirm by telephone call-back, as described in Option 1.

☐     *Option 3.  Delivery of funds transfer instructions by password protected file transfer system only - no confirmation*.  The Escrow Agent offers the option to deliver funds transfer instructions through a password protected file transfer system. If ["_____"] wishes to use the password protected file transfer system, further instructions will be provided by the Escrow Agent.  If ["_____"] chooses this Option 3, it agrees that no further confirmation of funds transfer instructions will be performed by the Escrow Agent.

☐     *Option 4.  Delivery of funds transfer instructions by password protected file transfer system with confirmation*.  Same as Option 3 above, but the Escrow Agent shall confirm funds transfer instructions by ☐ telephone call-back or ☐ e-mail (must check at least one, may check both) to a person at the telephone number or e-mail address designated on Part II above.  By checking a box in the prior sentence, the party shall be deemed to have agreed to the terms of such confirmation option as more fully described in Option 1 and Option 2 above.

*The password protected file system has a password that expires every 60 days. If you anticipate having infrequent activity on this account, please consult with your Escrow Agent before selecting this option.*

**Dated this ____ day of _____, 20__.**

**By** _____
**Name:**
**Title:**

EXHIBIT B-2

["_____"] certifies that the names, titles, telephone numbers, e-mail addresses and specimen signatures set forth in Parts I and II of this Exhibit B-2 identify the persons authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of ["_____"], and that the option checked in Part III of this Exhibit B-2 is the security procedure selected by ["_____"] for use in verifying that a funds transfer instruction received by the Escrow Agent is that of ["_____"].

["_____"] has reviewed each of the security procedures and has determined that the option checked in Part III of this Exhibit B-2 best meets its requirements; given the size, type and frequency of the instructions it will issue to the Escrow Agent.  By selecting the security procedure specified in Part III of this Exhibit B-2, ["_____"] acknowledges that it has elected to not use the other security procedures described and agrees to be bound by any funds transfer instruction, whether or not authorized, issued in its name and accepted by the Escrow Agent in compliance with the particular security procedure chosen by ["_____"].

NOTICE:  The security procedure selected by ["_____"] will not be used to detect errors in the funds transfer instructions given by ["_____"].  If a funds transfer instruction describes the beneficiary of the payment inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary.  If a funds transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.  Therefore, it is important that ["_____"] take such steps as it deems prudent to ensure that there are no such inconsistencies in the funds transfer instructions it sends to the Escrow Agent.

**Part I**

**Name, Title, Telephone Number, Electronic Mail ("e-mail") Address and Specimen Signature for person(s) designated to provide direction, including but not limited to funds transfer instructions, and to otherwise act on behalf of ["_____"]**

| Name | Title | Telephone Number | E-mail Address | Specimen Signature |
|------|-------|------------------|----------------|--------------------|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

**Part II**

**Name, Title, Telephone Number and E-mail Address for person(s) designated to confirm funds transfer instructions**

| Name | Title | Telephone Number | E-mail Address |
|------|-------|------------------|----------------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Part III**

**Means for delivery of instructions and/or confirmations**

The security procedure to be used with respect to funds transfer instructions is checked below:

☐      *Option 1.  Confirmation by telephone call-back*.  The Escrow Agent shall confirm funds transfer instructions by telephone call-back to a person at the telephone number designated on Part II above.  The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B-2.

         ☐   CHECK box, if applicable:
         If the Escrow Agent is unable to obtain confirmation by telephone call-back, the Escrow Agent may, at its discretion, confirm by e-mail, as described in Option 2.

☐      *Option 2.  Confirmation by e-mail*.  The Escrow Agent shall confirm funds transfer instructions by e-mail to a person at the e-mail address specified for such person in Part II of this Exhibit B-2. The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B-2.  ["_____"] understands the risks associated with communicating sensitive matters, including time sensitive matters, by e-mail.  ["_____"] further acknowledges that instructions and data sent by e-mail may be less confidential or secure than instructions or data transmitted by other methods. The Escrow Agent shall not be liable for any loss of the confidentiality of instructions and data prior to receipt by the Escrow Agent.

         ☐   CHECK box, if applicable:
         If the Escrow Agent is unable to obtain confirmation by e-mail, the Escrow Agent may, at its discretion, confirm by telephone call-back, as described in Option 1.

☐      *\*Option 3.  Delivery of funds transfer instructions by password protected file transfer system only - no confirmation*.  The Escrow Agent offers the option to deliver funds transfer instructions through a password protected file transfer system. If ["_____"] wishes to use the password protected file transfer system, further instructions will be provided by the Escrow Agent.  If ["_____"] chooses this Option 3, it agrees that no further confirmation of funds transfer instructions will be performed by the Escrow Agent.

☐      *\*Option 4.  Delivery of funds transfer instructions by password protected file transfer system with confirmation*.  Same as Option 3 above, but the Escrow Agent shall confirm funds transfer instructions by ☐ telephone call-back or ☐ e-mail (must check at least one, may check both) to a person at the telephone number or e-mail address designated on Part II above.  By checking a box in the prior sentence, the party shall be deemed to have agreed to the terms of such confirmation option as more fully described in Option 1 and Option 2 above.

*\*The password protected file system has a password that expires every 60 days. If you anticipate having infrequent activity on this account, please consult with your Escrow Agent before selecting this option.*

**Dated this _____ day of _____, 20__.**

**By** _____
**Name:**
**Title:**

EXHIBIT B-3

["_____"] certifies that the names, titles, telephone numbers, e-mail addresses and specimen signatures set forth in Parts I and II of this Exhibit B-2 identify the persons authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of ["_____"], and that the option checked in Part III of this Exhibit B-2 is the security procedure selected by ["_____"] for use in verifying that a funds transfer instruction received by the Escrow Agent is that of ["_____"].

["_____"] has reviewed each of the security procedures and has determined that the option checked in Part III of this Exhibit B-2 best meets its requirements; given the size, type and frequency of the instructions it will issue to the Escrow Agent.  By selecting the security procedure specified in Part III of this Exhibit B-2, ["_____"] acknowledges that it has elected to not use the other security procedures described and agrees to be bound by any funds transfer instruction, whether or not authorized, issued in its name and accepted by the Escrow Agent in compliance with the particular security procedure chosen by ["_____"].

<u>NOTICE</u>:  The security procedure selected by ["_____"] will not be used to detect errors in the funds transfer instructions given by ["_____"].  If a funds transfer instruction describes the beneficiary of the payment inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary.  If a funds transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.  Therefore, it is important that ["_____"] take such steps as it deems prudent to ensure that there are no such inconsistencies in the funds transfer instructions it sends to the Escrow Agent.

**Part I**

**Name, Title, Telephone Number, Electronic Mail ("e-mail") Address and Specimen Signature for person(s) designated to provide direction, including but not limited to funds transfer instructions, and to otherwise act on behalf of ["_____"]**

| <u>Name</u> | <u>Title</u> | <u>Telephone Number</u> | <u>E-mail Address</u> | <u>Specimen Signature</u> |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

**Part II**

**Name, Title, Telephone Number and E-mail Address for person(s) designated to confirm funds transfer instructions**

| <u>Name</u> | <u>Title</u> | <u>Telephone Number</u> | <u>E-mail Address</u> |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Part III**

**Means for delivery of instructions and/or confirmations**

The security procedure to be used with respect to funds transfer instructions is checked below:

☐    *Option 1.  Confirmation by telephone call-back*.  The Escrow Agent shall confirm funds transfer instructions by telephone call-back to a person at the telephone number designated on Part II above.  The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B-2.

        ☐  CHECK box, if applicable:

             If the Escrow Agent is unable to obtain confirmation by telephone call-back, the Escrow Agent may, at its discretion, confirm by e-mail, as described in Option 2.

☐    *Option 2.  Confirmation by e-mail*.  The Escrow Agent shall confirm funds transfer instructions by e-mail to a person at the e-mail address specified for such person in Part II of this Exhibit B-2. The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B-2.  ["_____"] understands the risks associated with communicating sensitive matters, including time sensitive matters, by e-mail.  ["_____"] further acknowledges that instructions and data sent by e-mail may be less confidential or secure than instructions or data transmitted by other methods. The Escrow Agent shall not be liable for any loss of the confidentiality of instructions and data prior to receipt by the Escrow Agent.

        ☐  CHECK box, if applicable:

             If the Escrow Agent is unable to obtain confirmation by e-mail, the Escrow Agent may, at its discretion, confirm by telephone call-back, as described in Option 1.

☐    *\*Option 3.  Delivery of funds transfer instructions by password protected file transfer system only - no confirmation*.  The Escrow Agent offers the option to deliver funds transfer instructions through a password protected file transfer system. If ["_____"] wishes to use the password protected file transfer system, further instructions will be provided by the Escrow Agent.  If ["_____"] chooses this Option 3, it agrees that no further confirmation of funds transfer instructions will be performed by the Escrow Agent.

☐    *\*Option 4.  Delivery of funds transfer instructions by password protected file transfer system with confirmation*.  Same as Option 3 above, but the Escrow Agent shall confirm funds transfer instructions by ☐ telephone call-back or ☐ e-mail (must check at least one, may check both) to a person at the telephone number or e-mail address designated on Part II above.  By checking a box in the prior sentence, the party shall be deemed to have agreed to the terms of such confirmation option as more fully described in Option 1 and Option 2 above.

*\*The password protected file system has a password that expires every 60 days. If you anticipate having infrequent activity on this account, please consult with your Escrow Agent before selecting this option.*

**Dated this _____ day of _____, 20__.**

**By** _____

**Name:**

**Title:**

<u>EXHIBIT C</u>

**FEES OF ESCROW AGENT**

Corporate Trust Services Schedule of fees to provide escrow agent services.